UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | LA CV11-1315 JAK (CWx) | Date | July 12, 2011 |
|---|---|---|---|
| Title | Kenneth Eade v. Investorshub.com, Inc., et al. | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Andrea Keifer | | Not Reported |
| Deputy Clerk | | Court Reporter / Recorder |
| Attorneys Present for Defendants: | | Attorneys Present for Plaintiffs: |
| Not Present | | Not Present |

**Proceedings:**   **(IN CHAMBERS) ORDER GRANTING DEFENDANT'S MOTION TO STRIKE PLAINTIFF KENNETH EADE'S COMPLAINT [24]  JS-6**

The matter presented is the Motion to Strike brought by Defendant InvestorsHub.com, Inc. ("Defendant") pursuant to California's Anti-SLAPP statute, Cal. Code Civ. Proc. § 425.16. Following briefing[1] and a hearing on June 28, 2011, the Court took the matter under submission. For the reasons set forth below, the Court GRANTS Defendant's Motion.

I.   Background

Plaintiff Kenneth Eade ("Plaintiff") is an attorney whose practice includes counseling clients with respect to issues arising under federal securities laws. He has particular expertise in advising small companies about becoming public companies. His practice areas also include counseling such companies on mergers and acquisitions, private placements, registration statements and disclosure compliance. His clients have included Gold Standard Mining Corporation, Supatcha Resources, Inc. ("Supatcha") and Fidelis Energy, Inc. In addition, Plaintiff has been an officer and director of Imperia Entertainment, Inc. ("Imperia"), a publicly-held motion picture and television production company. Plaintiff was also the executive producer of Imperia's two feature films. Plaintiff is also a current officer, director and shareholder in Independent Film Development Corporation, a company whose plan of operations is to distribute filmed entertainment. Several of Plaintiff's former clients have been

---

[1] The Court notes that Plaintiff's Opposition to the Special Motion to Strike was to have been filed no later than Monday, May 2, 2011. Plaintiff filed his Opposition on May 4, 2011, after Defendant filed a Notice of Non-Receipt of Opposition. Notice Non-Receipt of Opposition to Special Motion to Strike Compl., Docket No. 29 (May 3, 2011). Thus, the Court could strike Plaintiff's Opposition. Because Defendant filed a reply to the Opposition and had the opportunity to address the Opposition at oral argument, the Court has concluded that the prejudice to Defendant from the late filing of the Opposition is not sufficient to warrant its being stricken. Thus, the Court has considered the Opposition as well as the matters raised by Plaintiff at the oral argument. The Court has rejected in its entirety the Affidavit of Kenneth Eade, and its accompanying exhibits, in support of Plaintiff's Opposition to the Special Motion to Strike in the Court's June 28, 2011 Order. Order, Docket No. 50 (June 28, 2011). In addition, for the reasons stated in the Court's June 28, 2011 Order, portions of the Affidavit of Kenneth Eade were found to be improper and inadmissible; Defendant's Objections to such portions were sustained as stated in the Court's Order. *Id.*

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | LA CV 11-1315 JAK (CWx) | Date | July 12, 2011 |
|---|---|---|---|
| Title | Kenneth Eade v. Investorshub.com, Inc., et al. | | |

investigated by the United States Securities and Exchange Commission concerning questions with respect to the companies' publicly-disseminated information or promotion of stock. Plaintiff's legal representation of these companies did not directly involve these investigations or the underlying alleged misconduct.

Between September 2010 and the filing of the instant complaint, ten "Doe" defendants -- persons who have not been specifically identified -- allegedly posted numerous messages on an Internet website called InvestorsHub ("iHub"), managed by Defendant.[2] The iHub website organizes several, individual bulletin boards; each is dedicated to maintaining comments about a single, publicly traded company. Defendant's website and its bulletin boards are accessible to the public. Anyone with access to a computer and the Internet can become a member of iHub by registering. Registration requires that a person complete an on-line registration form and create a login name, alias (or screen name) and password. There are no requirements of expertise, knowledge or status to post a message on the electronic bulletin boards maintained on the iHub website. Further, those who use the site are largely anonymous; most use aliases.

Plaintiff alleges that Doe Defendants posted negative and allegedly defamatory messages on Defendant iHub bulletin boards dedicated to maintaining comments about seven publicly-traded companies: (i) Imperia Entertainment; (ii) Independent Film Development Corporation; (iii) Supatcha; (iv) Southridge Enterprises, Inc.; (v) Santana Mining, Inc.; (vi) Cannon Exploration, Inc., and (vii) Gold Standard Mining Co.[3] Examples of the postings at issue include statements that Plaintiff had "stolen everyone's (investors') money," that Plaintiff was running a "gold scam," that Plaintiff was a "scamster," and a "swindler," and that Plaintiff was engaged in a "pump and dump" scheme. Compl. ¶¶ 15-18. Plaintiff filed his complaint in federal court for defamation on February 11, 2011. Defendant iHub filed the instant Motion to Strike on April 15, 2011.[4]

II. Discussion

In enacting the Anti-SLAPP statute, the California Legislature stated "that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." Cal. Code Civ. Proc. § 425.16(a). Such lawsuits are referred to as those that constitute "Strategic Litigation Against Public Participation," from

---

[2] The website appears at the following web address and domain name: http://investorshub.advfn.com.

[3] The Complaint alleges that Imperia, Independent Film Development Corporation and Supatcha are all publicly-traded companies. Compl., ¶¶ 10-12. Pursuant to Fed. Rule Evid. 201, the Court takes Judicial Notice that Southridge Enterprises, Inc., Santana Mining, Inc., Cannon Exploration, Inc. and Gold Standard Mining Co. are also publicly-traded companies.

[4] During the June 28, 2011 oral argument on the instant motion, Plaintiff asserted for the first time that Defendant iHub lacked standing to bring the current motion. Plaintiff has brought this action against Defendant iHub on the basis that Defendant contributed to the content of, and maintained, the allegedly defamatory statements on its website. Compl., ¶ 23. Given this assertion of liability, Plaintiff cannot contend that Defendant lacks standing to present this motion, notwithstanding the claim that the Doe Defendants were the principal authors of the disputed postings. In short, because Plaintiff is pursuing claims against both categories of defendants, each necessarily has standing to contest the claims.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | LA CV11-1315 JAK (CWx) | Date | July 12, 2011 |
|---|---|---|---|
| Title | Kenneth Eade v. Investorshub.com, Inc., et al. | | |

which the acronym "SLAPP" is derived. To address such claims, the California Legislature enacted the anti-SLAPP statute, which provides:

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

Cal. Code Civ. Proc. § 425.16(b)(1).

Under the terms of this statute, the questions presently before the Court on iHub's Motion are: (i) whether the statements on Defendant iHub's bulletin boards were an exercise of Defendant's right to free speech "in connection with a public issue," and (ii) whether Plaintiff has established a probability of success on his defamation claim. *See Kashian v. Harriman,* 98 Cal. App. 4th 892, 906 (2002) (finding that resolution of an anti-SLAPP motion requires a two-step process: (i) the defendant must make "a threshold prima facie showing that the defendant's acts, of which the plaintiff complains, were ones taken in furtherance of the defendant's constitutional rights of petition or free speech in connection with a public issue"; and (ii) if the defendant makes this showing, "the burden then shifts to the plaintiff to establish a 'probability' of prevailing on the claim by making a prima facie showing of facts that would, if proved, support a judgment in the plaintiff's favor"). In considering a motion brought under this statutory regime, the anti-SLAPP law "shall be construed broadly." Cal. Code Civ. Proc. § 425.16(a).

    A. <u>Protected Speech</u>

Under the anti-SLAPP law, there are four categories of acts "in furtherance of the person's right of petition or free speech ... in connection with a public issue":

> (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

Cal. Code Civ. Proc. § 425.16(e). Defendant contends that the alleged statements fall within both § 425.16(e)(3) and § 425.16(e)(4).

    1. <u>Public Forum</u>

Section 425.16(e)(3) provides that, to be protected on a matter of public interest, the speech at issue must have taken place in a "public forum." A "'public forum' includes a communication forum that is widely distributed to the public and that contains topics of public interest, regardless whether the

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | LA CV 11-1315 JAK (CWx) | Date | July 12, 2011 |
|---|---|---|---|
| Title | Kenneth Eade v. Investorshub.com, Inc., et al. | | |

message is 'uninhibited' or 'controlled.'" *Damon v. Ocean Hills Journalism Club*, 85 Cal. App. 4th 468, 478-79 (2000). Courts routinely have found that publicly accessible websites are "public forums" for the purposes of § 425.16. *See Barrett v. Rosenthal*, 40 Cal. 4th 33, 41, n. 4 (2006); *Kronemyer v. Internet Movie Database Inc.*, 150 Cal. App. 4th 941, 950 (2007); *ComputerXpress, Inc. v. Jackson*, 93 Cal. App. 4th 993, 1007-08 (2001).

Statements on the iHub bulletin boards are accessible to all who choose to visit the website. Moreover, users may post initial or responsive messages after registering with the website. In their memoranda submitted prior to the June 28 hearing, Plaintiff did not dispute that Defendant iHub's bulletin boards constitute a place open to the public and a public forum. But, during that hearing, Plaintiff's counsel argued for the first time that the website's message boards did not constitute public fora because Defendant iHub purportedly charges for its posting services if the post is to remain in place for more than three days. Plaintiff produced no evidence in support of this contention.[5] An examination of the iHub website shows that members can "subscribe" to certain premium content and access to post on specific boards. However, registered users can utilize "free zone boards" without subscribing or satisfying any other requirement. Further, Plaintiff has presented no evidence that the bulletin boards at issue here were denominated by iHub as "premium content." But, even if it were the case, Plaintiff also has failed to provide any support for the proposition that a public forum that requires a subscription fee is no longer one under the terms of the anti-SLAPP statute. Moreover, the Court is not persuaded that, even if there were such a requirement, this would result in a finding that a web bulletin board is not a public forum. At most, such a forum might be analogous to the placement of a paid advertisement in a newspaper, magazine or other print medium -- something that, in the Court's view, would not per se disqualify the place of publication as a public forum. This conclusion makes particular sense in the present setting in which every bulletin board can be *read* by any user and only some of the bulletins boards require a modest fee to place a *post*. Thus, the Court finds that iHub's bulletin boards constitute a public forum for the purposes of § 425.16.

    2. Public Interest[6]

Section 425.16 provides that an, "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with public issue includes: ... any written or oral statement or writing made … in connection with a public issue or an issue of public interest." The "public interest" aspect of § 425.16 is meant to be construed broadly in the first step of the anti-SLAPP analysis. *See Hilton v. Hallmark Cards*, 599 F.3d 894, 906 (9th Cir. 2010). Plaintiff argues that "[w]hile it may be an exercise of free speech for the DOE Defendants to discuss certain publicly traded companies and to opine about the Plaintiff's role in connection with them, focusing on the Plaintiff specifically as the only subject of discussion," is not connected with any issue of public

---

[5] This does not appear to be the case from a simple review of the website and membership options. Without registering, any person can read any post on the entire website – in Free Zones or otherwise. Free registration entitles a user to post in any Free Zone. However, a free user is limited to 3 posts a day (15 per day once iHub reviews the user's account and posts). A premium member can post on any board, as many times as he or she likes. The lowest premium membership costs $8.33 a month.

[6] Courts apply the same standard to the public issue/issue of public interest requirements of subdivisions (e) (3) and (4). *See DuCharme v. Int'l Broth. of Elec. Workers, Local 45*, 110 Cal. App. 4th 107, 118 (2003).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | LA CV11-1315 JAK (CWx) | Date | July 12, 2011 |
|---|---|---|---|
| Title | Kenneth Eade v. Investorshub.com, Inc., et al. | | |

interest.[7]  Opp. at 13.  Plaintiff's arguments are not supported by either the settled law on this issue or the subject matter of the statements at issue in this case.

The Ninth Circuit has observed that California appellate courts have developed two principal tests for determining when an issue is public, rather than private.  The Court of Appeal for the First District has "surveyed the appellate cases and divined from them three categories of public issues: (1) statements 'concern[ing] a person or entity in the public eye'; (2) 'conduct that could directly affect a large number of people beyond the direct participants'; [and] (3) '… a topic of widespread, public interest.'"  *Hilton*, 599 F.3d at 906 (*quoting Rivero v. American Federation of State, County, & Municipal Employees,* 105 Cal. App. 4th 913, 923 (2003)).  The Third District has provided a somewhat more restrictive test:

> First, "public interest" does not equate with mere curiosity. Second, a matter of public interest should be something of concern to a substantial number of people. Thus, a matter of concern to the speaker and a relatively small, specific audience is not a matter of public interest. Third, there should be some degree of closeness between the challenged statements and the asserted public interest; the assertion of a broad and amorphous public interest is not sufficient.  Fourth, the focus of the speaker's conduct should be the public interest rather than a mere effort to gather ammunition for another round of private controversy. Finally, [a] person cannot turn otherwise private information into a matter of public interest simply by communicating it to a large number of people.

*Weinberg v. Feisel*, 110 Cal. App. 4th 1122, 1132-33 (2003) (internal quotation marks, citations, and alteration omitted).  However, this Court need not decide which of these tests should apply: The statements at issue in this matter satisfy both tests.

Statements concerning publicly-traded companies with investors are of public interest "because [their] successes or failures will affect not only individual investors, but in the case of large companies, potentially market sectors or the markets as a whole." *Global Telemedia Int'l, Inc. v. Doe 1*, 132 F. Supp. 2d 1261, 1265 (C.D. Cal. 2001).  The fact that bulletin boards dedicated to companies have thousands of postings confirms that the companies are of public interest.  *See id.*  Statements about the management of such publicly traded companies also qualify as matters of public interest.  *See id.* at 1263-64; *ComputerXpress,* 93 Cal. App. 4th at 1006-07.  Finally, statements about individuals who are public figures or "person[s] … in the public eye" are of public interest.  *Commonwealth Energy v. Investor Data Exchange*, 110 Cal. App. 4th 26, 33 (2003).  *See also Church of Scientology of Cal. v. Wollersheim*, 42 Cal. App. 4th 628, 651 (1996) (finding that matters of public interest can "include activities that involve private persons and entities" such as "investment scams"), *disapproved on other grounds by Equilon Enters. v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 67 (2002).

The allegedly defamatory statements that underlie Plaintiff's complaint in this action concern:  (i) Plaintiff's relationship with a publicly traded company; (ii) Plaintiff's management or creation of a

---

[7] Plaintiff also alleges that statements made here are similar to statements made by one competitor about another and are not in the public interest.  However, Plaintiff neither contends, nor presents evidence to support the claim, that Plaintiff and iHub are competitors.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | LA CV 11-1315 JAK (CWx) | Date | July 12, 2011 |
|---|---|---|---|
| Title | Kenneth Eade v. Investorshub.com, Inc., et al. | | |

publicly traded company; (iii) Plaintiff's conduct as an attorney; or (iv) Plaintiff's alleged role in investment scams related to publicly traded companies. Each individual bulletin board on which Doe Defendants allegedly posted actionable, defamatory statements regarding Plaintiff was designated to maintain comments related to a particular publicly traded company. These bulletin boards contained numerous postings about the companies and persons related to them.[8] In his role as an attorney, Plaintiff has represented two of these companies: Gold Standard Mining Corporation and Supatcha. In addition, Plaintiff has been an officer and director of two of the companies: Imperia and Independent Film Development Corporation. Furthermore, Plaintiff's own statements place him in the "public eye." He was the producer of two feature films and served as an officer or director of at least two publicly traded companies. Finally, a significant number of the allegedly defamatory statements here refer to Plaintiff's involvement in alleged investment scams relating to publicly traded companies.[9]

Statements regarding publicly traded companies, their management, and potential investment scams related to them all qualify as those made in the public interest under the anti-SLAPP statute. This is particularly so in light of both the substantial publicity about, and public attention to, various Ponzi schemes and other financial market misconduct.[10] In addition, the great disruptions in the public financial markets over the last several years also have led to resulting public interest in matters related to the stability and reliability of these markets. In short, the public has an interest not only in publicly traded companies and their management, but activities that may affect the value of the stock of such entities in which members of the public are direct or indirect investors.

For all of these reasons, the Court concludes that Defendant has made a sufficient threshold showing that the allegedly defamatory statements at issue here were made in connection with a matter of public interest.

B. Probability of Success

The next step in the anti-SLAPP analysis is to determine whether Plaintiff has met his burden to show that there is a probability of prevailing on his claims. Thus, Plaintiff is to present evidence sufficient to make a prima facie showing of facts that would, if proven, support a judgment in Plaintiff's favor. Plaintiff must show that his claim is both "legally sufficient" and that he has "admissible evidence" to support it. The burden is greater than Plaintiff's contention that he must "show a mere possibility of success on his claim to survive [an] anti-SLAPP motion." Opp. at 15. *See Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton*, 133 Cal. App. 4th 658, 675 (2005) (finding that Plaintiff needs to both "state and substantiate a legally sufficient claim"). Here, Plaintiff has failed to show a probability of success for two independent reasons: (i) the speech complained of here is nonactionable opinion; and (ii) Plaintiff has failed to plead actual malice.

---

[8] *See* Branstine Decl., ¶ 27 (number of postings ranged from 35 to 34,408 per company bulletin board).
[9] Plaintiff purportedly has no connection to Southridge Enterprises, Inc., Santana Mining, Inc. or Cannon Exploration, Inc. except for these allegations of investment scams or "pump and dump" schemes.
[10] *See, e.g.*, *SEC v. Madoff, et al.*, No. 08-10791 (S.D.N.Y. filed Dec. 11, 2008); *U.S. v. Madoff*, No. 09-00213 (S.D.N.Y. June 29, 2009); *SEC v. Rajaratnam*, No. 09-08811 (S.D.N.Y. filed Oct. 16, 2009); *U.S. v. Rajaratnam*, No. 09-01184 (S.D.N.Y. filed Dec. 15, 2009).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | LA CV11-1315 JAK (CWx) | Date | July 12, 2011 |
|---|---|---|---|
| Title | Kenneth Eade v. Investorshub.com, Inc., et al. | | |

1. Nonactionable Speech

The First Amendment limits defamation claims to those arising from a publication of a claimed fact. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990). Statements that "cannot reasonably be interpreted as stating actual facts about an individual are protected." *Id.* at 1. The critical determination whether an allegedly defamatory statement constitutes fact or opinion is a question of law for the court. *Baker v. Los Angeles Herald Examiner*, 42 Cal.3d 254, 260 (1986). If the court concludes the statement could reasonably be construed as either fact or opinion, the issue should be resolved by a jury. *Good Gov't Group of Seal Beach, Inc. v. Superior Court*, 22 Cal.3d 672, 680 (1978).

To determine whether a statement contains or implies a factual assertion, the Ninth Circuit has set forth a three-part test. *See Underwager v. Channel 9 Australia*, 69 F.3d 361, 366-67 (9th Cir. 1995). First, the totality of the circumstances in which the statement was made must be examined. *Underwager*, 69 F.3d at 366. This includes "the statement in its broad context, [including] the general tenor of the entire work, the subject of the statements, the setting, and the format of the work." *Id.* Second, the court must consider the "specific context and content of the statements, analyzing the extent of figurative or hyperbolic language used and the reasonable expectations of the audience in that particular situation." *Id.* Finally, the court must assess whether the "statement itself is sufficiently factual to be susceptible of being proved true or false." *Id.*

a. Totality of the Circumstances

Courts generally have found that internet bulletin boards and chat room postings lend themselves to constitutional protection. *See Global Telemedia*, 132 F. Supp. 2d at 1267. There, the challenged statements were "posted anonymously in the general cacophony of an Internet chat-room," and they were "part of an on-going, free-wheeling and highly animated exchange about [plaintiff] and its turbulent history." *Id.* Here, iHub's bulletin board system operates in a similar fashion. Users may freely and anonymously post comments on bulletin boards dedicated to particular companies. These comments often include criticism of publicly traded companies and their management. In this context, readers are more likely to view statements as opinions and not as assertions of fact. *See Art of Living Found. v. Does*, 2011 WL 2441898, at *7 (N.D. Cal. 2011) ("[i]n the broad context, the statements are made on obviously critical blogs…with heated discussion and criticism…[and] [i]n this context, readers are less likely to view statements as assertions of fact rather than opinion."); *Nicosia*, 72 F. Supp. 2d at 1101 (N.D. Cal. 1999) (statements made on personal website, through Internet discussion groups, and as part of heated debate are less likely viewed as statements of fact). *See also Higher Balance, LLC v. Quantum Future Group, Inc.*, 2008 WL 5281487, at *10 (D. Or. 2008) (finding that the broad context of Defendant's statements, including the fact that the comments were posted on an Internet format, suggests that she was publishing opinions critical of plaintiff). These cases are persuasive. This element of the three-part test supports a finding that the statements at issue were protected opinions.

b. Specific Context and Content of the Statements

The second step in the analysis calls for the Court to consider the specific context and content of the allegedly defamatory statements. This permits the Court to analyze "the extent of figurative or hyperbolic language used and the reasonable expectations of the audience." *Underwager,* 69 F.3d at

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | LA CV 11-1315 JAK (CWx) | Date | July 12, 2011 |
|---|---|---|---|
| Title | Kenneth Eade v. Investorshub.com, Inc., et al. | | |

366. The Complaint contains a limited amount of the specific language on which Plaintiff bases his claims. There are a few specifics: that Plaintiff is a "scamster," that he engages in "pump and dump" schemes, and that it is "easy to spot his fingerprints." Compl. ¶¶ 16-18. Defendant's Motion and Plaintiff's Opposition include further examples of similar posts by Doe Defendants. Def.'s Mot. to Strike at 18-19; *see also id.*, Ex. A; Eade Decl., Ex. 3.

The postings here demonstrate a "lack of formality and polish typically found in documents in which a reader would expect to find facts." *Global Telemedia*, 132 F. Supp. 2d at 1267. It appears from the critical tone of these postings that they are the opinions of posters, and not postings presenting facts to the reader. Thus, this second element of the three-part *Underwager* test also supports the conclusion that the statements at issue here were opinions.

c. Statements Susceptible to Being Proved True or False

Finally, the Court must determine whether the "statement itself is sufficiently factual to be susceptible of being proved true or false." Although it may be unpleasant for its subject, protected speech may include "vehement, caustic, and sometimes unpleasantly sharp attacks." *New York Times Co. v. Sullivan,* 376 U.S. 254, 270 (1964). The court is to review the categories of allegedly defamatory statements separately to determine if any such statements are susceptible of being proved true or false.

i. "Scam"

Allegedly defamatory statements here include ones that Plaintiff is a scam artist, "scamster," "swindler," runs "pump and dump" scams, manipulates people or stocks, is sleazy, unethical or otherwise scams people. Compl. ¶¶ 15-18. Plaintiff has provided no evidence or case law that would support the claim that such statements can be viewed as verifiable facts. The principal cases in this area have found that similar statements are not actionable, verifiable statements of fact, but are protected statements of opinion. *ComputerXpress*, 93 Cal. App. 4th at 1012-13 (finding that statements accusing Plaintiff of participating in a scam, "pump and dump" scheme, and "illegally conspiring with marketmakers for the company's stock to manipulate its value," were constitutionally protected). *McCabe v. Rattiner*, 814 F.2d 839, 842-43 (1st Cir. 1987) (holding that the "lack of precision [of the meaning of the word 'scam'] makes the assertion 'X is a scam' incapable of being proven true of false"); *NBC Subsidiary (KCNC-TV), Inc. v. Living Will Center*, 879 P.2d 6, 11 (Colo. 1994) (finding that a news broadcast describing plaintiff's living will kit as a "scam" was not actionable because it "neither contain[s] nor impl[ies] a verifiable fact nor can [it] reasonably be understood as an assertion of fact about [the plaintiff's] product"). The Court finds that alleged statements that Plaintiff was involved in a scam or pump and dump scheme are not verifiable statements that can be proved true or false.

ii. "Liar"

Plaintiff also alleges that he was called a liar. Compl. ¶ 17. In *Underwager*, the Ninth Circuit addressed the issue whether a statement that someone is "lying" is actionable. The court there found that "the term 'lying' applies to a spectrum of untruths including 'white lies,' 'partial truths,' 'misinterpretation,' and 'deception,' [and] [a]s a result, the statement is no more than nonactionable

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | LA CV11-1315 JAK (CWx) | Date | July 12, 2011 |
|---|---|---|---|
| Title | Kenneth Eade v. Investorshub.com, Inc., et al. | | |

'rhetorical hyperbole, a vigorous epithet used by those who considered [plaintiff's] position extremely unreasonable.'" *Underwager*, 69 F.3d at 367. *See also Standing Comm. on Discipline of the U.S. Dist. Ct. for the Central Dist. of Calif. v. Yagman*, 55 F.3d 1430, 1440-41 (9th Cir. 1995) (refusing to discipline an attorney for stating, among other things, that a district judge was "dishonest"); *Cochran v. NYP Holdings*, 210 F.3d 1036, 1038 (9th Cir. 2000) (affirming dismissal of defamation action brought by noted trial attorney based on the statement that the attorney would "say or do just about anything to win, typically at the expense of the truth"); *Nicosia*, 72 F. Supp.2d at 1106 (finding that "in the context of [a] heated debate on the Internet, readers are more likely to understand accusations of lying as figurative, hyperbolic assertions"); *Global Telemedia*, 132 F. Supp. 2d at 1269 (finding no actionable assertion of fact where defendant accused plaintiff in an Internet chat room of taking shareholder money and "ly[ing about] how it will be used"); *USA Technologies, Inc. v. Doe*, 713 F. Supp. 2d 901, 905, 908 (N.D. Cal. 2010) (finding it to be nonactionable speech for defendant to accuse the plaintiff company's CEO of being a "known liar" because he over-inflated the value of his company); *Rocker Mngmt. LLC v. Does*, 2003 WL 22149380, at *3 (N.D. Cal. 2003) (holding that posts on message board stating that the plaintiff would "float rumors, lies and half-truths anywhere they can" did not give rise to a claim for defamation"). The Court finds this analysis persuasive here because the statements that Plaintiff lied are not verifiable ones that can be proven true or false.

###### iii. "Criminal"

Plaintiff alleges that he was accused of having "stolen everyone's (investor's) money," that he "was engaging in illegal actions," that he "stole my money," that he is a "crook who uses the same system of fraud time after time," and engages in criminal "pump and dump" scams. Compl. ¶¶ 15, 17-18. General allegations that Plaintiff committed crimes, or was engaged in illegal "pump and dump" schemes, taken in the context of anonymous bulletin board postings, cannot reasonably infer actual criminal conduct. Plaintiff's argument that the phrase "stole my money" is actionable fails to consider the broad context of the bulletin boards in which the statements were made. The statements alleging Plaintiff specifically stole money from one or more Doe Defendants or investors are properly viewed as ones of belief or opinion, not of fact. Thus, they do not readily lend themselves to the interpretation that they are statements of fact about theft, as opposed to statements of opinion, *i.e.,* that the Doe Defendants believed that certain investors, including themselves, were owed amounts from Plaintiff. *See Sundance Image Tech., Inc. v. Cone Editions Press, Ltd.*, 2007 U.S. Dist. LEXIS 16356 (S.D. Cal. 2007). This conclusion is confirmed when the statements are viewed in the overall context of the publication at issue in this matter. For these reasons, the Court finds that the alleged statements by the Doe Defendants concerning criminal conduct cannot reasonably be construed as other than the authors' opinions about Plaintiff.

##### 2. Actual Malice

Plaintiff has failed to meet his burden of showing that his defamation claims are "legally sufficient" for a separate reason: He did not plead actual malice in his Complaint.

Defamatory statements regarding matters of public concern are actionable only if the plaintiff pleads and proves that the defendant acted with constitutional actual malice. *Miller v. Nestande*, 192 Cal. App. 3d 191, 197-98 (1987). This standard applies not only to public figures, but also to private

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | LA CV 11-1315 JAK (CWx) | Date | July 12, 2011 |
|---|---|---|---|
| Title | Kenneth Eade v. Investorshub.com, Inc., et al. | | |

figures defamed with statements that are of public concern. *Id.* Neither party disputed that this requirement applies here. When a plaintiff fails to plead actual malice, his claim is legally insufficient and must be dismissed. *See Vogel v. Felice*, 127 Cal. App. 4th 1006, 1017-18 (2005) (finding that a "conclusory boilerplate allegation that defendant acted 'maliciously and oppressively, and in conscious disregard of [plaintiff's] rights'" did not satisfy the pleading requirement because "[s]uch an allegation is insufficient to state a cause of action in a case where 'actual malice'… is required.").

Here, the challenged statements were of public concern. Accordingly, in order to establish the legal sufficiency of his claims, Plaintiff was required to plead actual malice. Plaintiff failed to do so. Plaintiff argues that, under Civil Rule 8, he sufficiently pleaded actual malice. Plaintiff also contends that, in this federal proceeding, he need not allege facts showing malice, and that it can be implied from the defamatory content itself. Plaintiff does not cite any case law supporting these assertions. The Court is not persuaded and finds that Plaintiff's claim is legally insufficient due to a failure to allege, or to offer evidence to support, malice.

      C. Request for Further Discovery with Respect to the Defense Under the Communications Decency Act

As an alternative ground in support of its motion, Defendant contends that Plaintiff cannot show probable success on his claim because it is barred by 47 U.S.C. § 230(c) (1), which is a component of the Communications Decency Act ("CDA"). Section 230 provides a broad grant of immunity to Internet websites from liability for user-generated content, *i.e.,* where the information was provided not by the party that maintains the website, but by another party. *See Carafano v. Metrosplash.com*, 339 F.3d 1119, 1122 (9th Cir. 2003). Immunity will apply if: (i) the defendant is a provider or user of an interactive computer service; (ii) the cause of action treats the defendant as a publisher or speaker of information; and (iii) the information at issue is provided by another information content provider. *See Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100-01 (9th Cir. 2009).

Plaintiff contends that, in order to respond to the motion on this ground, he requires discovery as to two issues: (i) whether Defendant is a computer interactive service or content provider and (ii) the identity of Doe Defendants and whether they are employees, agents, or in any other way under the control of Defendant iHub.

The party opposing an anti-SLAPP motion to strike has no guaranteed right to discovery. Instead, upon the filing of an anti-SLAPP motion, discovery is automatically stayed. If the non-moving party wishes to pursue discovery, such party must demonstrate "good cause" to the Court. Thus, under Cal. Code Civ. Proc. § 425.16(g), the non-moving party must justify "specified discovery" as an exception to the stay. *Id.*; *Braun v. Chronicle Publ'g Co.,* 52 Cal.App.4th 1036, 1052 (1997) (requiring showing of good cause). Plaintiff contends that the non-moving party in an anti-SLAPP motion brought in a federal court is entitled to discovery as of right before a motion to strike a complaint can be heard.[11] District courts have considered under what circumstances, if at all, the discovery limiting aspects of the

---

[11] Plaintiff incorrectly attributes the quote on page 9 of his Opposition to *United States v. Lockheed Missiles & Space Co.*, 171 F.3d 1208 (9th Cir. 1999). *Lockheed* does not discuss discovery in the context of an anti-SLAPP motion, only that anti-SLAPP motions may be brought in federal court.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | LA CV11-1315 JAK (CWx) | Date | July 12, 2011 |
|---|---|---|---|
| Title | Kenneth Eade v. Investorshub.com, Inc., et al. | | |

California statute apply in federal court. *See Price v. Stossel*, 590 F. Supp. 2d 1262, 1270 (C.D. Cal. 2008) (collecting cases). Courts have noted, however, that the standard for allowing discovery under § 425.16(g) (for good cause shown) is essentially the same as the Rule 56(f) standard (essential to the opposition to a motion for summary judgment). *See, e.g. New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090, 1101 (C.D. Cal. 2004). Thus, there is likely no inherent conflict between § 425.16(g) and Rule 56. *Id.* at 1102. The question here is whether the discovery sought by Plaintiff is essential to his Opposition.

Defendant iHub raised the issue of CDA immunity in its Motion, submitting a declaration (albeit a conclusory one) in support of this argument. *See* Branstine Decl. Defendant's argument and the Branstine declaration opened the door to discovery on this issue notwithstanding that Plaintiff failed to identify any specific discovery that he needed to obtain to oppose this aspect of the motion to strike. *See New.Net, Inc.*, 356 F. Supp. 2d at 1102 (finding that plaintiff had not shown that discovery was essential to the opposition because "it has not stated with any degree of specificity what discovery it needs or how that discovery would bear on this motion"). To the extent Defendant's Motion relies on an immunity argument*, i.e.,* that Defendant played no material role in the postings at issue in this matter, Plaintiff would be entitled to discovery. *See Lauter v. Anoufrieva*, 642 F. Supp. 2d 1060, 1110 (C.D. Cal. 2009) (If a defendant makes an anti-SLAPP motion based on the plaintiff's failure to submit evidence to substantiate its claims, the motion is treated as a motion for summary judgment, and discovery must be developed sufficiently to permit summary judgment under Rule 56.")

However, the other two grounds of the anti-SLAPP Motion are based on defects appearing on the face of the Complaint. Resolution of the Defendant's Motion on those issues is based on legal deficiencies in the Complaint and the standards of Rule 12 should be applied. *See id.* ("If an anti-SLAPP motion is based on legal deficiencies in the complaint, a federal court must determine the motion in a manner that complies with the standards set by Federal Rules 8 and 12."). Thus, because the Court has found that the anti-SLAPP motion should be granted on the alternative grounds discussed above, the Court does not reach the CDA defense or whether Plaintiff's request for discovery with respect to that defense is appropriate.

D. Leave to Amend

California state courts and district courts in the Ninth Circuit consistently have held that, the general rule that amendment of pleadings is permitted liberally, does not apply in anti-SLAPP cases. *See Flores v. Emmerick & Fike*, 2006 WL 25366152, at *10 (E.D. Cal. 2006); *Thomas v. Los Angeles Times Comm. LLC*, 189 F. Supp. 2d 1005, 1017 n. 11; *Mory v. City of Chula Vista*, 2008 WL 360449, at *5, n.5; *Simmons v. Allstate Ins. Co.*, 92 Cal. App. 3th 1068, 1073 (2001). The rationale for this strict rule is that amendments could frustrate the Legislature's objective of providing a "quick and inexpensive method of unmasking and dismissing [anti-SLAPP] suits." *Id.* At least one California Court of Appeal has concluded that an amendment may be allowed to show the probability of plaintiff prevailing on the merits, based on evidence submitted in opposition to the anti-SLAPP motion. *See Nguyen-Lam v. Cao*, 171 Cal. App. 4th 858, 870-71 (2009). However, in his Opposition, Plaintiff has presented no evidence, or argument supporting his contention that he has a probability of prevailing on the merits. Furthermore, because the speech here is likely nonactionable, there are no additional facts that Plaintiff

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | LA CV 11-1315 JAK (CWx) | Date | July 12, 2011 |
|---|---|---|---|
| Title | Kenneth Eade v. Investorshub.com, Inc., et al. | | |

could allege to show a probability of prevailing on the merits. Thus, granting Plaintiff leave to amend would be futile.

III.   Disposition

      For all of the reasons set forth in this Order, the Court GRANTS Defendant iHub's Motion to Strike.

   IT IS SO ORDERED

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | ak | | |